UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENISE PRICE,<br>5313 Jay Street NE<br>Washington, D.C. 20019,<br><br>                       Plaintiff,<br>     v.<br><br>OFFICER JOSEPH GUPTON<br>c/o Office of the Attorney General<br>441 4th Street NW<br>Washington, D.C. 20001,<br><br>DISTRICT OF COLUMBIA<br>c/o Office of the Attorney General<br>441 4th Street NW<br>Washington, D.C. 20001,<br>                      Defendants. | No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES**
(Fourth Amendment Unreasonable Search; Trespass)

**INTRODUCTION**

In this civil rights action, Denise Price asserts her right to enjoy privacy in her home without unjustified intrusions by government agents.

On May 11, 2018, Ms. Price was sitting in her yard with family members and friends, discussing funeral arrangements for her son, Jeffery Price, who had been killed by Metropolitan Police Department (MPD) officers just seven days earlier. In the midst of that conversation, two police cars pulled up near her home. Officer Joseph Gupton exited his vehicle, entered Ms. Price's backyard, and searched it. He had no warrant. When challenged, he articulated no basis for having probable cause and identified no exigent circumstances. Furthermore, he did not respond when Ms. Price and her guests repeatedly told him to leave.

1

This unjustified intrusion yielded no contraband or evidence of crime. Its sole consequence was to violate Ms. Price's constitutional and common law rights to enjoy dominion over her home and security within it.

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because Ms. Price asserts a claim under the Fourth Amendment to the United States Constitution. Her claims under the common law of the District of Columbia arise from the same events as her constitutional claim and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Ms. Price's claims occurred in the District of Columbia.

## PARTIES

3. Plaintiff Denise Price is an adult resident of the District of Columbia who owns a home, with a small, adjacent backyard, at 5313 Jay Street NE.

4. Defendant Joseph Gupton is a sworn member of the Metropolitan Police Department. At the time of the events at issue, he was acting within the scope of his employment and under color of law of the District of Columbia. He is sued in his individual capacity.

5. Defendant District of Columbia is a municipal corporation, the local government of Washington, D.C., and operates and governs the MPD pursuant to the laws of the District of Columbia. In this case, the District of Columbia acted through its agents, employees, and servants, including Defendant Gupton.

## FACTS

6. Denise Price's home is located at 5313 Jay Street NE. She purchased the home in April 2001, raised three of her children there, and currently lives in the residence with her three-year-old daughter, Zariya Price, and thirteen-year-old son, Amir Stone.

7. Presshea Johnson, Ms. Price's eldest daughter, rents a home located at 5315 Jay Street NE. The two homes share a common wall.

8. Directly abutting Ms. Price's house are a front yard, a back yard, and a small side yard containing a paved path that connects the front and back sides of the property. Ms. Price is the exclusive owner of this property.

9. Ms. Johnson's home has its own back and front yards. A fence separates her land from Ms. Price's.

10. Fencing also separates Ms. Price's yard from the public sidewalk as well as the yards belonging to her other neighbors.

11. Ms. Price uses her backyard for family gatherings, including barbeques, and she often will sit and converse with her family in the yard during warm days. She keeps a grill and a patio table with two chairs in the side yard.

12. On May 4, 2018, seven days before the search that is the subject this action, an MPD vehicle collided with a dirt bike driven by Ms. Price's son Jeffery and killed him.

13. Ms. Price and her brother Jay Brown condemned the officers' actions in statements to the media. For example, on May 6, 2018, FOX 5 DC quoted Mr. Brown as saying that the police committed "a premeditated homicide." Evan Lambert, *Family of Dirt Bike Rider Killed in Crash with D.C. Police Questioning Police Reports*, FOX 5 DC (May 6, 2018 10:23pm), http://www.fox5dc.com/news/local-news/family-of-dirt-bike-rider-killed-in-

crash-with-dc-police-questioning-police-reports. And on May 9, ABC7 quoted Ms. Price as saying that "riding a bike is not a death penalty. Arrest him, give him a ticket, do what you have to do, but don't kill him." Anna-Lysa Gayle, *Family Hires Attorney After Man Dies in Crash Involving D.C. Police Crusier*, ABC7 (May 9, 2019), https://wjla.com/news/local/Jeffery-price-dirt-bike-dc-police.

14. During the early evening of May 11, 2018, just a few days after she and her brother had made these public comments, Ms. Price saw a police car stop on her street.

15. A few minutes later, that car drove off and two other police cars arrived, one containing Officers Gupton and David Whitehead and another driven by Sergeant Ryan Small.

16. When the police cars arrived, Ms. Price was sitting on a chair on her side yard talking with Mr. Brown and other family members and friends about plans for Jeffery's funeral.

17. Officers Gupton and Whitehead exited their vehicle.

18. Officer Whitehead walked into the backyard that belonged to Ms. Price's neighbor at 5311 Jay Street NE and conducted a brief search.

19. Meanwhile, Officer Gupton approached two cars parked in front of Ms. Price's house and shined his flashlight through their windows.

20. After inspecting the cars, Officer Gupton turned and proceeded along a path leading into the backyard of 5315 Jay St. NE—the yard of Ms. Price's daughter, Ms. Johnson.

21. As Officer Gupton approached Ms. Johnson's yard, Mr. Brown, who had stepped onto the street, asked him if he had a search warrant. Officer Gupton continued walking onto Ms. Johnson's property without acknowledging Mr. Brown's question.

22. As Mr. Brown continued to protest, Officer Whitehead walked toward Ms. Johnson's backyard as well.

23. Once in Ms. Johnson's yard, Officer Whitehead looked around it and then walked to a fence at the far end of the yard, which he peered over so that he could inspect the yard behind Ms. Johnson's.

24. Officer Gupton entered Ms. Price's backyard by passing through a gap in the fence that separated her property from Ms. Johnson's.

25. When Ms. Price saw Officer Gupton standing in her backyard, she called out to Mr. Brown, "they're in my yard." Addressing the officer, she stated, "Sir, sir, sir, can you leave off my yard please? Unless you got a warrant, I don't want you in my yard."

26. Ms. Price walked into her backyard and repeated this request four more times. Officer Gupton did not respond.

27. Instead, he stood near the fence on the western edge of Ms. Price's property and surveyed the yard belonging to 5311 Jay Street NE.

28. Officer Gupton proceeded to tour Ms. Price's yard, walking along the fence, turning around a tree, and pausing briefly to look at the area near a set of back steps that led up to the house.

29. As Officer Gupton walked around the yard, Ms. Price and Mr. Brown repeatedly objected to his presence.

30. Officer Gupton continued his search despite their protestations.

31. After finishing his inspection of Ms. Price's backyard, Officer Gupton returned to Ms. Johnson's yard and searched it.

32. From there, Officer Gupton returned to Jay Street NE and entered his cruiser, where Officer Whitehead joined him.

33. Then, the officers drove off the block.

34. On information and belief, they proceeded to drive onto James Place NE, the street directly to the south of the street on which Ms. Price lives.

35. Shortly thereafter, one of Ms. Price's guests saw Officer Whitehead search a yard belonging to a house with an address on James Place NE located behind and slightly to the west of Ms. Price's home.

36. The same guest saw Officer Whitehead hop a fence and search a second yard belonging to a home on James Place NE.

37. The guest then saw Officer Whitehead jump back over the fence and walk toward James Place NE.

38. The officers had no warrant to enter Ms. Price's yard.

39. At a District of Columbia Council hearing on July 12, 2018, MPD Chief Peter Newsham confirmed that the officers had no warrant to enter Ms. Price's yard.

40. On information and belief, the officers also lacked probable cause to justify a search of Ms. Price's property.

41. Ms. Price believes MPD targeted her yard to retaliate against her for the comments she made about the police department's role in her son's death.

42. MPD has offered alternative explanations but its account has not remained consistent.

43. During the July 12, 2018 D.C. Council hearing, Chief Newsham testified that MPD had reached a preliminary conclusion that the officers were seeking to recover a gun that they believed had been abandoned on Ms. Price's property.

44. However, during a March 22, 2019 meeting, Marvin (Ben) Haiman, executive director of MPD's Professional Development Bureau, told Jay Brown that Officer Gupton entered

Ms. Price's yard to search for an armed suspect whom another officer had reported was nearby.

45. MPD has not attempted to reconcile these differing accounts or provide further clarification regarding whether its officers were purportedly searching for a person or an object.

46. MPD has not disclosed to Ms. Price, her family, or the general public any facts that would have led a reasonable officer to believe that he would find either a gun or a criminal suspect in Ms. Price's yard.

47. On information and belief, no exigent circumstances justified Officer Gupton's intrusion into Ms. Price's yard.

48. Ms. Price does not recall observing any stranger on her property (other than Officer Gupton) or any person engaging in criminal or suspicious activity in the vicinity of her home on the day of the search.

49. Neither Ms. Price nor any of her guests was experiencing a medical emergency or being threatened with harm at the time Officer Gupton entered her property.

50. The officers' behavior during the events described above did not reflect any urgency.

51. None of the officers asked any questions of Ms. Price or her guests, warned them of any threats, or assessed if they needed aid.

52. The officers did not arrive at Ms. Price's property in response to a 911 call.

53. In response to a Freedom of Information Act request, the District of Columbia Office of Unified Communications stated that it had no record of receiving any calls for service from the 5300 block of Jay Street NE on May 11, 2018.

54. The officers did not find any contraband, evidence of crime, or criminal suspects on Ms. Price's property.

55. The officers did not find any such items or people on Ms. Johnson's property.

56. Since the search, Ms. Price has felt anxious that MPD officers will return to her home and harm her or her family.

57. This fear wakes her up at night, causing her to check her windows to ensure that no one is standing outside and to make sure that the doors are locked.

58. Ms. Price's anxiety has also impeded her ability to nap during the day. Prior to the search, napping had been a daily practice for Ms. Price to cope with exhaustion that resulted from routine walking in wake of a knee replacement she had in 2017. Since the search, Ms. Price has had trouble taking naps during the day due to the fear that police officers might invade her property. Now, she can only nap if she knows that a friend or neighbor is standing outside.

59. Ms. Price feels particularly anxious around police officers. For example, when a police car drives by, she often notices her heart rate increase and her hands start to sweat.

60. These types of concerns led Ms. Price to purchase a landline for her home so that her children can call for help if the police intrude. She has also repaired one of the storm doors to her house to make entry more difficult.

61. Ms. Price does not want these fears to continue inhibiting her. Acting on the advice of her primary care physician, Ms. Price began weekly therapy sessions on January 22, 2019 to treat her anxiety.

62. Although Ms. Price felt sad and anxious after her son died, her anxiety worsened after Officer Gupton entered her yard.

63. On November 7, 2018, Ms. Price satisfied the requirement of D.C. Code § 12-309 by providing notice of her claims against the District of Columbia.

## CLAIMS FOR RELIEF

### Claim I: Violation of Fourth Amendment Rights / 42 U.S.C. § 1983
### (Defendant Gupton)

64. The Fourth Amendment to the United States Constitution protects Ms. Price's right to be free from unreasonable searches by government officers.

65. Officer Gupton violated this right when, under color of law, he entered and searched Ms. Price's backyard—which is part of the curtilage of her home—even though he had no warrant, and, on information and belief, had no probable cause and could not properly rely on any exceptions to the warrant requirement.

### Claim II: Trespass
### (Defendants Gupton & District of Columbia)

66. District of Columbia law grants Ms. Price a right not to endure unauthorized entries onto her property that result in interference with her possessory interest in the land.

67. Officer Gupton violated that right when he invaded Ms. Price's yard without lawful authority to do so and remained there after Ms. Price repeatedly directed him to leave.

68. The District of Columbia is liable under the doctrine of *respondeat superior* for the damages inflicted upon Ms. Price by the trespass committed by its agent, Officer Gupton, while acting with the scope of his employment as an MPD officer and on behalf of and in the interests of his employer.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Price requests that this Court:

(a) RULE that the actions of Officer Gupton violated Ms. Price's rights under the United States Constitution and the laws of the District of Columbia;

(b) RULE that the District of Columbia is liable to Ms. Price under the doctrine of *respondeat superior*;

(c) ENTER JUDGMENT awarding Ms. Price compensatory damages against all defendants in an amount appropriate to the evidence adduced at trial;

(d) ENTER JUDGEMENT awarding Ms. Price her costs and reasonable attorneys' fees in this action as provided in 42 U.S.C. § 1988; and

(e) GRANT Ms. Price such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

*/s/ Scott Michelman*
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Michael Perloff[*]
American Civil Liberties Union Foundation
    of the District of Columbia
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
smichelman@acludc.org

April 29, 2019                      Counsel for Plaintiff

---

[*] Admitted to practice in New York but not D.C. Practicing in D.C. under the supervision of a D.C. Bar member while application to D.C. Bar under consideration, pursuant to D.C. Ct. App. R. 49 (c)(8).